IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, ) | |
| ) | |
| ) | Criminal No. 21-168 & 21-330 |
| v. ) | |
| ) | |
| **FELIPE RAMOS,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

I.   **Introduction**

Pending before the court are motions for compassionate release filed by counsel on behalf of Defendant Felipe Ramos ("Ramos" or "Defendant) at each of his criminal cases (Crim. No. 21-168, ECF No. 235; Crim. No. 21-330, ECF No. 21). Ramos also attached 16 pages of medical records in support of his motions. The Government filed a response in opposition to the Defendant's motions (Crim. No. 21-168, ECF No. 238). The motions are ripe for decision.

II.   **Factual and Procedural Background**

On May 26, 2023, Ramos pleaded guilty to counts 1 and 2 of the indictment at Crim. No. 21-168, which charged him with: (Count 1) conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in and around March 2021, in violation of 21 U.S.C. § 846; and (Count 2) possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, on or about March 25, 2021, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii). The guilty pleas were entered in

accordance with a Rule 11(c)(1)(C) plea agreement, with an agreed-upon sentence.  As part of the plea agreement, the government withdrew the § 851 Information it filed about a prior serious drug conviction, which would have required a 10-year mandatory minimum prison term.

The Rule 11(c)(1)(C) plea agreement also included Ramos' acknowledgement of guilt for supervised release violations at Crim. No. 21-330.  The underlying criminal case was originally filed in Massachusetts and was transferred to this court.  The parties agreed on the appropriate sentence for those supervised release violations.

On April 23, 2024, the court accepted the parties' Rule 11(c)(1)(C) plea agreement and imposed the agreed-upon sentence at both cases.  Specifically, he was sentenced to 70 months of imprisonment at each of counts 1 and 2 at Crim. No. 21-168 (to run concurrent with each other), to be followed by 18 months of imprisonment at Crim. No. 21-330, to run <u>consecutive</u>, for a total of 88 months in prison.   The court imposed a term of 4 years of supervised release at each count at Crim. No. 21-168, to run concurrent and no further supervision at Crim. No. 21-330.

Ramos is now 45 years old.  Ramos's release date is currently scheduled for April 4, 2027. https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results, last visited February 21, 2025.

### III. Discussion

#### A. Applicable Law

"A federal court generally may 'not modify a term of imprisonment once it has been imposed.'" <u>Dillon v. United States</u>, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). <u>United States v. Easter</u>, 975 F.3d 318, 323 (3d Cir.

2

2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon, 560 U.S. at 824).

Prior to the enactment of the First Step Act, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). Ray v. Finley, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act, among other things, amended § 3582(c)(1)(A) and expanded the compassionate release and reduction in sentencing programs by permitting the filing of a motion in federal court by an inmate, after the inmate exhausted administrative remedies through the BOP. United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) (citing 18 U.S.C § 3582(c)(1)(A)(i)).

Section 3582(c)(1)(A), as amended by the First Step Act, provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.** —The court may not modify a term of imprisonment once it has been imposed except that—
>
>> (1) in any case—
>>
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>>
>>>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>>>
>>>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person

3

>or the community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a three-part analysis for district courts to utilize to resolve a motion for compassionate release after the court has determined that the inmate exhausted the administrative remedies. First, the Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), the district court needs to find that "'extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). Third, the district court must consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, 833 F. App'x 366, 367 n.2 (3d Cir. 2020).

Based upon the foregoing, to grant Ramos compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[1] and (3)

---

[1] The factors set forth in 18 U.S.C. § 3553(a) are:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with

4

compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Ramos cites the following as extraordinary and compelling reasons: (1) he suffers from a multitude of medical conditions, including depression, chronic compression of his spine at C5 and C6, multilevel degenerative disc changes, moderate multilevel facet arthropathy at C7-T1, which results in cervical spine and neck pain, and an inguinal hernia that returned after surgery; and (2) his mother's physical and mental condition.

Ramos bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, 470 F. Supp. 3d 489 at *512 (E.D. Pa. 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See, e.g., United States v. Matthews, No. CR 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020).

Paraphrasing 18 U.S.C. § 3582(c)(1)(A), "under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." United States v. Sellers, No. CR 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)).

---

similar records who have been found guilty of similar conduct, § 3553(a)(6); and
– the need to provide restitution to any victims of the offense, § 3553(a)(7).

### B. Application of the Law

#### 1. Exhaustion

As an initial matter, Ramos attached the warden's rejection of his administrative request for release, but failed to attach his actual request to show the reasons for which he sought release. The government, however, provided Ramos' request and agrees that Ramos exhausted the claims he now presents to the court. (ECF No. 238 at 4-5 & 238-1).

#### 2. Extraordinary and Compelling Reasons

A sentencing court may reduce a prisoner's sentence if "'extraordinary and compelling reasons warrant such a reduction' and the reduction is consistent with both the Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a)." United States v. Rutherford, 120 F.4th 360, 364 (3d Cir. 2024) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The court commented that "[a] sentencing court must first conclude, as a matter of law, that a prisoner is *eligible* for a sentence reduction before it decides whether he *qualifies* for a reduction." Id. (emphasis in original). The court "explained that 'whether any given prisoner has established an extraordinary and compelling reason for release' is a 'threshold question' that determines a prisoner's eligibility for compassionate release." Id. (quoting United States v. Stewart, 86 F.4th 532, 535 (3d Cir. 2023)).

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 470 F. Supp. 3d 489, at *499 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). After the First Step Act

was enacted "extraordinary and compelling reasons" were considered to apply to prisoner-initiated motions, as well as to BOP-filed motions for compassionate release. Rutherford, 120 F.4th at 365; see United States v. Andrews, 12 F.4th 255 (3d Cir. 2021).

In April 2023 the Sentencing Commission issued an Amendment to the Policy Statement officially defining "extraordinary and compelling reasons" for prisoner-filed motions for compassionate release. Id. The 2024 Guidelines Manual contains the updated policy statement. As relevant to the pending motion, the policy provides that the court may reduce a term of imprisonment if, after considering the § 3553(a) factors, it determines: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to any person or the community; and (3) the reduction is consistent with the policy. U.S.S.G § 1B1.13. The policy identifies potential extraordinary and compelling reasons based on (1) medical circumstances of the defendant; (2) age; (3) family circumstances; (4) victim of abuse; (5) other reasons similar in gravity to (1)-(4); and (6) an unusually long sentence. Id.

The court of appeals noted "'when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' arguments.' . . . [The] order may be brief and need not be a point-by-point rebuttal[.]" United States v. Alicea, No. 22-2176, 2023 WL 3947212, at *2-3 (3d Cir. June 12, 2023) (quoting Concepcion v. United States, 597 U.S. 481, 500-01 (2022)).

### a. First category: defendant's medical conditions

Ramos lists in his petition a myriad of medical conditions. He maintains that these conditions "diminish[ ] his ability to function in the facility"; the scope of care available in the institution "will be more limited than that available in the community"; his mobility challenges "present daily difficulties"; and he "may be at risk of manipulation by other inmates based on his

physical vulnerability."  (ECF No. 235 at 4).

Pursuant to U.S.S.G § 1B1.13, "extraordinary and compelling" medical conditions include:

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
(B) The defendant is—
   (i) suffering from a serious physical or medical condition,
   (ii) suffering from a serious functional or cognitive impairment, or
   (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G § 1B1.13(b)(1).

Ramos has the burden of proof to establish his conditions are more than just a collection of bothersome issues, and instead reach the level of serious deterioration in health. U.S.S.G § 1B1.13(b)(1)(C). While the court acknowledges Ramos's medical challenges, his conditions are not "sufficiently … unique or exceptional." United States v. Wax, No. CR 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (citing four decisions); see Pawlowski, 967 F.3d at 328-29 (denying release for defendant with hypertensive heart disease, chronic COPD, dyspnea, sleep apnea, and only one lung).

Ramos did not provide any evidence that his condition is "significantly" diminished.  The medical records he provided reflect there is no acute vertebral body compression and no malalignment.  (ECF No. 235-5 at 3).  He is receiving medications for his depression, arthritis and other conditions.  (ECF No. 235-5 at 4).  Ramos did not identify any medical care that he needs that would be available in the community but is unavailable to him while detained.  He acknowledges that he received surgery for his hernia while incarcerated.  His concern about

manipulation by other inmates is speculative. His depression, mobility challenges and chronic degenerative neck and back pain will present similar challenges to him in the community upon release. "Even in the pre-vaccine era, release was regularly denied based on such chronic, controlled conditions, which are not out of the ordinary." Matos, 2022 WL 702858, at *5. Based on the foregoing considerations, none of Ramos's medical conditions are considered terminal illnesses at their current point, and they do not prevent him from accessing care or advocating for self-care within the correctional facility environment. For these reasons, Ramos's medical conditions do not meet the level of extraordinary or compelling to justify early release.

### b. Second category: defendant's mother's condition

Ramos relies on U.S.S.G. § 1B1.13(b)(3)(C), which provides, in relevant part, that extraordinary and compelling circumstances exist due to: "(C) The **incapacitation** of the defendant's **parent when** the defendant would be the **only available caregiver** for the parent." U.S.S.G. 1B1.13(b)(3) (emphasis added).

This category contemplates an incarcerated person needing to become available to serve as the primary caregiver for an incapacitated parent. Counsel for Ramos argues in the motion that Ramos' mother is 64, suffers from nerve damage in her back and depression/loneliness, and requires regular trips to her doctor 90 minutes from her home. There is nothing in the record, however, to support any of these assertions.

The term "incapacitation," is "interpreted to mean 'completely disabled,' and to refer to someone who 'cannot carry on any self-care and is totally confined to a bed or chair.'" United States v. Nassida, No. CR 14-241, 2020 WL 4700845 (W.D. Pa. Aug. 13, 2020) (quoting United States v. Collins, No. 15-10188, 2020 WL 136859 (D. Kan. Jan. 13, 2020)). There is no evidence that Ramos' mother is incapacitated; indeed, he acknowledges that she performs household chores

9

(albeit very slowly). There are no records about her current medical condition. Instead, it appears that his primary concern is for the future, i.e., that "her struggles will only worsen with the passage of time." (ECF No. 235 at 5).

In addition, there is no evidence to indicate that Ramos would be the *only* caregiver available for his mother. See e.g., Matthews, 2020 WL 5217132 at *6; U.S.S.G. 1B1.13(b)(3)(C). To repeat, it is Ramos' burden to show that he meets each element of an extraordinary and compelling circumstance. As the government points out, Ramos has a sister, children and wife and there has been no demonstration that other relatives are unavailable. Ramos' concerns for his mother, while understandable, do not justify a finding of extraordinary or compelling reasons to support early release.

### 3.   § 3553 Factors

Release must also be warranted by the § 3553 factors. In this case, because Ramos did not meet his threshold burden to demonstrate an extraordinary and compelling reason for compassionate release, the court will not weigh the § 3553 factors. The court, however, will briefly address what appears to be some confusion on the part of Ramos' counsel. Counsel argues that compassionate release now "aligns very well" with the court's original sentence, which included a 4-year term of supervised release (ECF No. 235 at 2, 6). That understanding is not correct.

To be clear, the court accepted and imposed the parties' agreed-upon sentence, as set forth in the Rule 11(c)(1)(C) plea agreement. That sentence included three components: (1) a 70-month prison term at Crim. No. 21-168; (2) a consecutive 18-month prison term at Crim. No. 21-330 (for a total of 88 months in prison); and (3) a 4-year term of supervised release at Crim. No. 21-168. The term of supervised release will not begin until Ramos has completed both of his prison terms.

Compassionate release now is not consistent with Ramos' original sentences or his plea agreement with the government.

### IV.     Conclusion

For the reasons set forth above, Ramos' motions for compassionate release (Crim. No. 21-168, ECF No. 235; Crim. No. 21-330, ECF No. 21) will be denied.

An appropriate order will be entered.

BY THE COURT,

Dated: March 20, 2025

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Court Judge